IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
C.D., a Minor, by and      )
Through her Mother and     )
Next Friend, Cynthia       )
Davenport,                 )
                           )
     Plaintiff,            )
                           )     CIVIL ACTION NO.
     v.                    )       2:14cv952-MHT
                           )            (WO)
COCA-COLA REFRESHMENTS     )
USA, INC.,                 )
                           )
     Defendant.            )
```

OPINION

   Plaintiff C.D., a six-year-old, suing by and through her mother, filed this lawsuit against defendant Coca-Cola Refreshments USA, Inc., claiming that a CVS Pharmacy store shelf and plastic bottles of detergent displayed on the shelf injured her while she was sitting in a shopping cart. The removal jurisdiction of the court has been invoked pursuant to 28 U.S.C. §§ 1441, 1332 (diversity of citizenship). Because this case involves a minor, the parties have asked the court to approve their proposed settlement.

At a pro ami hearing, the court heard from counsel for both parties, C.D.'s mother, and C.D.'s court-appointed guardian ad litem. The settlement will be approved.

I.

Alabama law requires that a court hold a fairness hearing before a minor plaintiff's case may be settled. <u>Largo v. Hayes By and Through Nesbitt</u>, 534 So. 2d 1101, 1105 (Ala. 1988).  This is a rule of substantive law, which must be applied by federal courts sitting in diversity.  <u>Burke v. Smith</u>, 252 F.3d 1260, 1266 (11th Cir. 2001).  In order for the settlement to be binding on the minor, the hearing must involve "'examination or investigation into the facts.'"  <u>Abernathy v. Colbert Cnty. Hosp. Bd.</u>, 388 So. 2d 1207, 1209 (Ala. 1980) (quoting 42 Am.Jur.2d Infants § 47 (1978)).

2

II.

On the morning of April 9, 2012, C.D. was shopping with her mother and grandmother in a CVS Pharmacy in Montgomery, Alabama. According to C.D.'s mother, while they were in the store, the corner of a wood pallet, which was being maneuvered into place by a Coca-Cola Refreshments USA employee, bumped a metal shelf and tipped it over, and both the shelf and plastic bottles of detergent displayed on the shelf injured C.D. while she was sitting in a shopping cart. C.D. was treated at, and released from, a hospital emergency room. X-ray views of her head revealed no fracture. C.D. was treated by her primary-care doctor the day after the incident and was released to her mother's care. The primary care-doctor referred her to a pediatric neurologist for further treatment "as needed."

Following an extensive examination that included an electroencephalogram, the pediatric neurologist determined that C.D.'s injury was minor "and that there

3

was no reason to think that there [were] any long-term consequences from that injury." Sanchez Depo., (doc. no. 46-3) at 37-38.

After the incident, C.D. received psychological treatment for a number of behavioral issues. The treating psychologist stated that he could not "attest ... with any degree of psychological certainty" that C.D.'s behavioral issues were caused by the CVS Pharmacy incident. Clark Psychological Associates Notes (doc. no. 47-4) at 2. There is no indication from any source uncovered during the lengthy discovery phase of this case that C.D. will require any treatment in the future for any issues relating to this incident.

C.D. sued Coca-Cola Refreshments USA asserting two claims: negligence and wantonness. Coca-Cola Refreshments USA filed a motion for partial summary judgment on the wantonness claim. The court notes, for the purposes of the issue now before the court, that the motion is well supported by both fact and law and likely would have been granted. Coca-Cola Refreshments

4

USA has asserted a number of additional affirmative defenses to C.D.'s claims and has denied liability for the incident.

The parties propose to settle this case based on payment by Coca-Cola Refreshments USA in the amount of $ 19,000.00 in full satisfaction of all claims C.D. has or could have asserted in this case. Under the proposed settlement, C.D.'s counsel would be paid $ 7,600.00 out of the settlement as an attorney's fee. In addition, out of the settlement, C.D.'s counsel would be paid $ 2,430.74 in reimbursement for expenses incurred in filing and prosecuting the action. The proposed settlement also bears a $ 667.54 Medicaid lien for medical treatments for C.D.

At the pro ami hearing, C.D.'s counsel, her court-appointed guardian ad litem, and her mother testified about the circumstances surrounding the incident and C.D.'s injuries, treatment, recovery and current condition. C.D.'s mother further testified about the various ways she intended to use the

5

settlement funds to benefit C.D. and that she understood and approved of the settlement. C.D.'s counsel and the guardian further testified about their understanding of the settlement and asked that it be approved by the court. They explained that a total of $ 10,698.28 for the attorney's fee and expenses and the Medicaid lien would be subtracted from the $ 19,000.00 settlement, with the result that C.D. would receive $ 8,301.72. All expressed their opinions that the settlement is in the best interest of C.D. given the nature of her claims and injuries and the defenses to them.

C.D.'s counsel also explained the terms of the contingency-fee agreement and expenses incurred in prosecuting the action. As stated, her counsel seek a fee of $ 7,600.00 and reimbursement for $ 2,430.74 in expenses. The court finds that the fee and expenses are reasonable under the factors set forth in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), and that the fee has been duly earned by counsel. The representation of

6

C.D. required significant learning, skill and labor for its proper discharge; her attorneys spent 40 hours on her case; one attorney has three years of experience practicing law and was assisted by another attorney who has 35 years of experience practicing law; the attorneys achieved a successful result, that is, a favorable settlement in light of the injuries and the significant dispute as to liability; the attorneys and C.D.'s mother agreed to a contingency-fee arrangement, which is customary for such cases in this jurisdiction; and the attorneys' time devoted to this case could have been profitably spent on other matters.

Upon consideration of the testimony, other evidence introduced at the pro ami hearing, and its knowledge of the facts and circumstances of this case, the court finds that the proposed settlement is fair, reasonable, just, and in C.D.'s best interest and thus should be approved.  The court is convinced that C.D.'s mother will use the funds solely for C.D.'s benefit.

While all agree that, although the proposed settlement, less the attorney fee and expenses, would mean that C.D. would receive only $ 8,301.72, the settlement is still reasonable and in C.D.'s best interest, there is still the question of how the clerk of the court should disburse the $ 8,301.72 to C.D. The court will allow, as explained below, for an initial and immediate payment to C.D.'s mother, for C.D's exclusive benefit, of $ 2,301.72, with yearly payments of $ 2,000.00 for each of the following three years.

> Alabama law provides:
>
> "(a) Any person under a duty to pay or deliver money or personal property to a minor may perform the duty, in amounts as provided in this subsection, by paying or delivering the money or personal property to:
>
> (1) Any person having the care and custody of the minor and with whom the minor resides;
>
> (2) A guardian of the minor; or
>
> (3) The judge of probate of the county in which the minor resides, if a

>       resident of this state, or, if a
>       nonresident, to the judge of probate
>       or like officer of the county in which
>       the debtor or creditor resides.
>
>       Payments under this subsection must
>       not exceed $ 5,000 if paid in a single
>       payment, or $ 3,000 a year if paid in
>       a series of payments, and payments, by
>       any person other than a conservator or
>       judge, must not exceed a maximum of
>       $ 25,000 during the minority of the
>       minor ward."

1975 Ala. Code § 26-2A-6.

Pursuant to this law, counsel for the parties and the guardian ad litem initially proposed that C.D.'s mother would receive an immediate payment of $ 5,000 to be used for C.D.'s benefit, with the remaining $ 3,301.72 kept by the clerk of the court until six-year-old C.D. reached her majority, that is, 19. The problem the court and counsel saw with this proposal was that the interest the $ 3,301.72 would earn would be de minimus and that, after such a lengthy delay in release, there might even be court management costs, further reducing the modest award. Counsel for the parties discussed, and the guardian strongly

9

recommended, the court remand this case to state court so that that court could manage the funds perhaps more to the benefit of C.D., but all agreed that a remand would likely result in a redoing of the pro ami proceedings, and also there is no guarantee the state-court judge would reach a result different from that of this court.  Counsel for the parties and the guardian also explained that a probate-court conservatorship was not feasible, because the cost of the conservatorship would eat up the small amount involved.  Counsel for the parties, at the court's suggestion and over the guardian's objection, finally agreed that periodic payments of $ 3,000 or less per year, which is allowed by the above statute, would be best for C.D.  The court agrees.

   The most convincing point is that, because the sum involved is far from a bountiful future nest-egg but rather is quite modest and of very limited financial benefit, the sum would benefit six-year-old C.D. more during her early and critical developmental years than

later in life. The evidence reflects that C.D. has learning problems and that her mother has very limited means. Now, not later, is the time that these modest funds can have their greatest impact on C.D., that is, while she is very young and developing and in most need of financial help, no matter how small.

The court will therefore require that the clerk of the court pay out the $ 8,301.72 in structured payments to C.D.'s mother, for C.D.'s benefit, as follows: an initial and immediate payment of $ 2,301.72, with yearly payments of $ 2,000.00 for each of the following three years.

Finally, before closing, there is the guardian ad litem's fee, which Coca-Cola Refreshments USA has agreed to bear. The guardian seeks a fee of $ 1,100.00. She does not seek reimbursement for expenses. The court finds that the guardian's fee is reasonable under the factors set forth in Peebles and that it has been duly earned by the guardian. The position required significant learning, skill, and labor for its proper

11

discharge; the guardian spent eight hours on the case; she has 18 years of experience practicing law; the result for C.D. is favorable in light of the injuries and the significant dispute as to liability; the fee of $ 1,100.00 is customary for such cases in this jurisdiction; and the guardian devoted time on this matter that could have been profitably spent on other matters.

Indeed, the guardian ad litem's performance in this case has been exceptional. While the court did not accept her suggestion that part of the sum to be paid out to CD's mother (for use on CD) should be kept until CD reaches majority, her suggestion reflected detailed and thoughtful consideration. Rarely, if ever, has a guardian ad litem, to this court's knowledge, acted so independently and thoroughly, qualities that should attend all guardians' appointments.

***

The court will enter an appropriate judgment requiring the settlement of $ 19,000.00 to be paid into the court and then disbursed as follows:

| Paid to: | Amount: |
| --- | --- |
| Gathings Law, for attorney fees ($ 7,600.00) and expenses ($ 2,430.74) | $ 10,030.74 |
| Gathings Law, to be paid to Medicaid on C.D.'s behalf | $ 667.54 |
| Cynthia Davenport, on C.D.'s behalf ("first payment") | $ 2,301.72 |
| Cynthia Davenport, one year from date of first payment | $ 2,000.00 |
| Cynthia Davenport, two years from date of first payment | $ 2,000.00 |
| Cynthia Davenport, three years from date of first payment | $ 2,000.00 |
| Total | $ 19,000.00 |

The court will also require that Coca-Cola Refreshments USA pay the guardian ad litem's fee of $ 1,100.00.

DONE, this the 15th day of June, 2015.

                                         /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**